UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


PRESTON S. MURRAY,

        Plaintiff,                        CIVIL ACTION NO. 07-13098

       v.                                 DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits and supplemental security income (SSI). Plaintiff alleged that he was disabled as of January 31, 2003, due to reflex sympathetic dystrophy and diffuse neuropathy of both feet and depression. He was 25 years old at the time of his alleged onset date. Plaintiff had past relevant work as a service technician, fast food worker, bagger, arcade attendant, and retail clerk. He has at least a high school education and is able to communicate in English. (Tr. 25) The defendant found that plaintiff was not able to perform his past relevant work, but that he retained the residual functional capacity for a limited range of light work and, therefore, was not disabled. Plaintiff contends that this finding is not supported by substantial evidence. Defendant contends otherwise. For the reasons discussed in this Report, it is recommended that the defendant's motion for summary for summary judgment be granted and decision denying benefits be upheld.

**Legal Standards**

    **A. Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that she is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both SSI and DIB claims. 20 C.F.R. § 404.1520. As discussed in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### Analysis

Plaintiff alleges that the Commissioner, having found plaintiff unable to perform his past relevant work, failed to satisfy the burden of showing that there was other work existing in significant numbers that plaintiff could perform. As part of this claim, plaintiff alleges that the hypothetical answered by the vocational expert, and relied upon by the ALJ in making the determination, did not accurately set forth all of plaintiff's impairments. Specifically, plaintiff contends that his concentration difficulties eliminate even the simple, routine tasks that he was found able to perform by the ALJ. He also contends that the ALJ failed to properly evaluate the opinion of Dr. Awerbuch.

Plaintiff reported in his initial claim that he is 5 10" and weighs 150 pounds. He alleges that neuropathy renders him disabled. (Tr. 72) His work history shows that he worked for one month as a supermarket bagger, one month as a crew person in a fast food restaurant, six years as a service tech for office equipment repair and for some time as game advisor in video game system sales. (Tr. 73) In these positions, he made road trips, cleaned offices, repaired and did troubleshooting on machinery (copiers and faxes), and did customer satisfaction work. He lifted machinery and copiers up to 25 pounds. (Tr. 74) Plaintiff lists his doctors as Dr. Boike, Dr. Georgakopoulos, and a podiatrist Dr. Neirink. (Tr. 75) He has his GED and certificate in office machine repair. (Tr. 77) He states that he has been sickly his entire life. He was born prematurely with organs outside his body and has had congestive heart failure and two double hernias before age 6. (Tr. 77)

At the hearing, plaintiff testified that he weighed 175 pounds, lived with his wife and children in a duplex and was taking some college classes. (Tr. 227-229) He last worked part-time at Game Stop. The only problem he has is his foot pain. He can stand for 15 or 20 minutes but then his feet really bother him. The pain has been getting more intense over time. (Tr. 239-240) His hands have also been bothering him a lot lately; they lock up and hurt. (Tr. 241) His wife works and he is home with the two children. (Tr. 246) He does not use a walker or wheelchair but does have a handicapped parking plate. (Tr. 248) Plaintiff takes Neurotin four times a day, as well as Paxil, Erelefin, and Nexium; all of these were prescribed by Dr. Awerbuch. (Tr. 250) Plaintiff uses no other drugs, alcohol, or cigarettes. (Tr. 251) Plaintiff eats potatoes, Cheerios, and popcorn. He eats no meat, fish, or other protein. He eats only limited fruit–a few grapes and an apple or an orange. (Tr. 251-252)

Ann Trembly testified as a vocational expert. She identified plaintiff's past work as light and ranging from unskilled to semi-skilled. If plaintiff required a sit/stand option, there would be light and sedentary work he could do. He could not do his past work with that requirement

because none of his jobs permitted a sit/stand option.  He could however work as an assembler, machine operator, or stock clerk.  He would need to be productive and be there except for lunch and breaks.  (Tr. 259-261)

**Medical Evidence**

In April, 2004, he was seen by Dr. Neirink, D.P.M., for podiatric care.  Arch padding was unsuccessful and no custom orthotics would be attempted due to the peripheral neuropathy.  (Tr. 156, 158)

Plaintiff was seen for neurologic follow up in May, 2004, by Dr. Boike, M.D., a neurologist at Michigan Spine Care in Flint.  Plaintiff was seen initially on April 30, 2004.  Plaintiff had lab work done by his physician's office, Dr. Georgakopoulos, which was unremarkable.  His complaint was that he experienced distal lower extremity numbness which had lasted for a few months.  He was on Neurotin 200 mg.  Examination revealed normal strength and normal reflexes in both lower extremities, both proximately and distally.  The EMG studies of both lower extremities were unremarkable except that sural sensory responses could not be elicited.  Dr. Boike believed that plaintiff had an acquired peripheral neuropathy with no known cause.  It was recommended that he increase his Neurotin to 300 mg, and then to 600 mg in a week.  If he did not receive relief, he should be referred to the University of Michigan.  There were no follow up appointments planned.  (Tr. 117-120)

In July, 2004, a residual functional capacity assessment was performed.  Plaintiff was found able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk 6 of 8 hours, sit 6 hours, and unlimited push/pull abilities.  (Tr. 133)

In September, 2004, he was seen at University of Michigan for an evaluation.  (Tr. 197)  Nerve conduction studies were normal.  (Tr. 201)  In May, 2005, nerve conduction studies were also normal but the sural and medial plantar response were lower than expected.  (Tr. 205)  In January, 2005, plaintiff was seen at the University of Michigan Neuromuscular Disorders Clinic.

He had no back pain, bowel, or bladder difficulties. His coordination and gait testing were normal. His MRI showed some minor abnormalities in the cervical and thoracic areas. He had significant sclerosis and spinal stenosis with pain in his feet. The EMG was normal but with a sural nerve amplitude borderline with a value of 6. (Tr. 184-5) He did have many abnormalities in his spine from his history of scoliosis. But, there was no evidence of any abnormal signal in the spinal cord, which was reassuring. (Tr. 192)

In April, 2005, plaintiff was seen at the University of Michigan Arthritis Clinic. He was accompanied by his father. He reported that his symptoms started in January 2004. He has a poor diet according to his father and has always been very underweight, but recently increased his weight up to 150 pounds. He is beginning to feel itchy and dry around his elbows. (Tr. 172) He has some scoliosis and a family history of psoriasis. (Tr. 173) In March, he had been seen at the U of M Neurosurgery Department. Plaintiff's strength was normal and he had deep tendon reflexes of +1 in upper and lower extremities. There were no pathologic reflexes. Sensation was normal. (Tr. 180)

In May, 2005, plaintiff was also seen at the University of Michigan. In a letter to Dr. Georgakopoulos, the resident reports that plaintiff was noted to have a rash on his legs which was determined to be nothing more than folliculitis. His examination was unchanged from previously. He has normal reflexes (+2) throughout and normal strength. He had decreased but present vibration in his toes, and decreased temperature sensation. He had significant dysethesia and allodynia in his feet. EMG results were not significantly different from the earlier ones and showed borderline low normal plantar foot responses. On his lab studies, B12 was somewhat low normal. (Tr. 163-164)

In November 2005, plaintiff complained of sleep apnea and restless sleep. Dr. Awerbuch, M.D., performed an overnight polysomnogram which showed zero obstructive apneic episodes, zero central episodes, zero mixed episodes and ten obstructive hypopneas. The

impression was sleep fragmentation and poor sleep architecture. It was recommended that he pay close attention to sleep hygiene issues, lose weight,[1] caution about use of CNS depressants, driving and operation dangerous machinery, and rule out underlying causes of excessive daytime sleepiness and fatigue. (Tr. 141) Dr. Awerbuch also examined him for persistent burning pain and loss of function in his lower extremities. He cannot wear shoes, his feet swell, he has abnormal hair and nail growth, his feet always feel cold. The sleep issue was deemed insignificant. (Tr. 142) Dr. Awerbuch diagnosed Reflex sympathetic dystrophy (RSD). Plaintiff's medication was changed from Neurotin to Lyrica and Catapres. Dr. Awerbuch also stated that plaintiff had bilateral carpal tunnel syndrome. Carpal tunnel braces and B vitamins were recommended. (Tr. 144) Plaintiff's EMG in September 2005 was normal. (Tr. 146,147) Studies at Michigan Diagnostic Testing for three phase bone scan of the feet, bilateral foot x-rays, and right and left femur studies were all normal in September 2005. (Tr. 151) Scans of his wrists at Med-Scan, Inc. In December 2005 were negative. (Tr. 153)

Plaintiff was seen at the Pain Management Center of Flint in December 2005 at the request of Dr. Awerbuch. Plaintiff was given a left lumbar sympathetic block using bupivacaine. (Tr. 154) It provided some relief.

In June, 2006, plaintiff was seen by Dr. Awerbuch complaining of burning pain in his feet. The feet were red and discolored and there was a los of sensation distally. He had an anatalgic gait. The impression was chronic lower extremity pain with finding of RSD, erythromelalgia and sensory neuropathy, and adjustment disorder with depression. (Tr. 216) A Doppler study and gray scale examinations were performed May 12, 2006, at Med-Scan Diagnostics. These were both normal. (Tr. 217) There was also no evidence of deep venous thrombosis or occlusion of the visualized deep veins. (Tr. 219)

---

[1] A questionable finding in light of plaintiff's persistent underweight status.

**The Hypothetical**

Plaintiff alleges that he should not have been found to be able to perform the jobs identified because he could not concentrate due to depression. The defendant argues that the ALJ reasonably found that the plaintiff's depression resulted in no impairments in his activities of daily living, only mild limitations in social functioning, and moderate limitations in concentration, persistence and pace and no episodes of decompensation. (Tr. 24) The court agrees with defendant. Plaintiff takes care of his two young children, has never required treatment from a mental health professional, is able to drive, shop, and take college classes. He has no evidence regarding any work-related limitations as a result of the mental health impairment. No physicians who have seen or treated plaintiff at the University of Michigan Hospital have mentioned any depression. Indeed, the only physician who mentions it is Dr. Awerbuch and he provides little if any documentation for his conclusion. Plaintiff himself stated at the hearing that his only problem was his feet. The ALJ's hypothetical reasonably accommodated plaintiff's physical condition and depression and no evidence supports a conclusion that either is disabling or prevents the performance of the work identified.

**Opinion of Dr. Awerbuch**

With respect to the conclusion of Dr. Awerbuch, plaintiff argues that it was error to fail to give credence to this opinion. This argument is not supportable. Plaintiff is correct that the ALJ should have discussed this opinion. The court is concerned that the ALJ is indeed not fulfilling the requirements of the statute and regulations. Failure to discuss the opinion was error and the agency should advise the ALJ of this finding. But, it was harmless in this instance. Dr. Awerbuch gives no medical basis for his conclusion that plaintiff cannot work.

Plaintiff argues that the treating physician's testimony was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating

physicians.  Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  It is also true that complete deference is given when said opinions are uncontradicted.  However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984).  Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987).  The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.  Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435).

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability.  Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations of pain.  There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

In this case, plaintiff has demonstrated the medical condition of neuropathy but no findings or objective testing show that it is of such a severity that it likely to be completely disabling.  The EMGs and other objective studies have generally been within normal limits, all other testing has failed to confirm a basis for the pain.  Plaintiff has been advised of the need to eat a diet consistent with increased levels of B12 and other nutrients.  His lab work in this regard has been fairly unremarkable but his testimony at trial regarding his diet indicates that he has not

made efforts to improve his eating. The University of Michigan has not noted any medical support for disabling pain. No medical evidence or findings support Dr. Awerbuch's conclusion that plaintiff is disabled. It should also be noted that a statement by plaintiff's physician that he or she is "disabled" or "unable to work" does not mean the defendant will determine that individual plaintiff is disabled. The defendant is responsible for reviewing the medical findings and other evidence that support a physician's statement of disability and determine whether or not said individual is disabled. 20 C.F.R. §404.1527.

After reviewing the record, the court finds that substantial evidence supports the defendant's decision. Therefore, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                              s/Virginia M. Morgan  
                              Virginia M. Morgan  
                              United States Magistrate Judge

Dated: April 25, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 25, 2008.

                              s/Jane Johnson  
                              Case Manager to  
                              Magistrate Judge Virginia M. Morgan